NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0331n.06

No. 16-5759

| | | |
|---|---|---|
| **UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT** | | **FILED**<br>Jun 13, 2017<br>DEBORAH S. HUNT, Clerk |

FOREST CREEK TOWNHOMES, LLC, )
)
    Plaintiff-Appellant, )
)
v. )    ON APPEAL FROM THE
)    UNITED STATES DISTRICT
)    COURT FOR THE WESTERN
CARROLL PROPERTY MANAGEMENT, LLC and )    DISTRICT OF TENNESSEE
HEDIGER ENTERPRISES, INC., )
)    OPINION
    Defendants-Appellees. )
)

BEFORE: DAUGHTREY, KETHLEDGE, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** The Plaintiff, Forest Creek Townhomes, LLC,

owns an apartment complex in Memphis, Tennessee. Defendant Hediger Enterprises, Inc.,

owned by co-Defendant Carroll Property Management, LLC, managed the property prior to

Forest Creek's ownership. Forest Creek brought claims against Defendants for negligent

misrepresentation and breach of contract in Tennessee state court. Forest Creek alleges that

Hediger's representatives negligently misrepresented that the property did not contain mold to

Barry Cohen, current sole member of Forest Creek, and that Hediger breached a property

management agreement originally contracted by alleged predecessors-in-interest to Forest Creek

and Hediger. Defendants removed the case to federal court and the district court denied a motion

to remand. The district court granted Defendants' motion for judgment on the pleadings on the

negligent misrepresentation claim and granted summary judgment to Defendants on the breach of contract claim. We affirm.

## I.     BACKGROUND

This case relates to an apartment complex at 1305 Turkey Run Lane in Memphis, Tennessee (the Property). In 2007, the property's then-owner, MPI Coventry Village, LLC, entered into a contract with Miles Properties, Inc. in which Miles would provide MPI with property management services (the Contract). The Contract prohibited assignment without prior written approval from the other party.

In 2010, Miles filed for bankruptcy. The bankruptcy court approved the transfer of Miles's interest in the Contract to Hediger because, despite the Contract's non-assignment clause, it deemed MPI's non-objection to be consent under the Bankruptcy Code.

In January 2011, Barry Cohen visited the Property in connection with a potential purchase. During that visit two of Hediger's employees allegedly told him, incorrectly, that the Property did not contain mold.

In September 2011, Highland Creek Acquisition, LLC was formed, and shortly thereafter Highland Creek purchased the Property. The purchase was financed by mortgagee Lloyd's Acceptance Corp., of which Cohen was president. On September 27, 2011, MPI executed an agreement providing Highland Creek with MPI's "right, title and interest (if any) in and to all . . . Service Contracts . . . to the extent the same are assignable."

Defendants terminated the Contract on September 28, 2011. During the following month, Defendants and Cohen communicated about potentially reestablishing property management services to no avail. Because MPI had only provided a quitclaim transfer to Highland Creek, Lloyd's foreclosed upon the Property in November 2011 to obtain clear title.

Lloyd's was the highest bidder at the foreclosure sale. Forest Creek was organized as an LLC a few days later, and Lloyd's transferred the Property to Forest Creek on November 29, 2011.

Highland Creek was administratively dissolved in 2012. In May 2014, Highland Creek and Lloyd's executed an assignment agreement purportedly assigning Forest Creek the "right, title and interest in and to all personal property owned by either [Highland Creek or Lloyd's] and related to the Property including, without limitation, all contract rights."

Forest Creek filed this suit in the Chancery Court of Tennessee on October 22, 2014. In January 2015, Cohen became the sole member of Forest Creek. On September 2, 2015, Defendants removed the case to federal court. The district court denied Forest Creek's motion to remand, concluding that Defendants' removal was not untimely because they could not determine Forest Creek's citizenship from the complaint or public records, and thus did not have adequate grounds for removal until Forest Creek responded to interrogatories on August 26, 2015. The court granted Defendants' motion for judgment on the pleadings as to the negligent misrepresentation claim and denied Forest Creek's motion to amend that claim, concluding that the allegations in the proposed amended complaint did not show that Forest Creek could reasonably rely on statements made to Cohen. In a subsequent order the court granted summary judgment to Defendants on the breach of contract claim and denied Forest Creek's motion to amend that claim, concluding that the Contract was not properly assigned to Highland Creek and thus Forest Creek did not have standing to assert any rights under the Contract. The court also denied Forest Creek's request to join Cohen as a plaintiff because the court had already dismissed the negligent misrepresentation claim, which was the only claim that would have been related to Cohen's. Forest Creek timely appealed.

## II.    ANALYSIS

We review de novo a district court's decision on motions for remand, judgment on the pleading, and summary judgment. *Burniac v. Wells Fargo Bank, N.A.*, 810 F.3d 429, 432–33 (6th Cir. 2016) (remand and summary judgment); *Hoven v. Walgreen Co.*, 751 F.3d 778, 783 (6th Cir. 2014) (judgment on the pleadings).

### A.    Remand

Forest Creek filed this suit in state court on October 22, 2014, and served Defendants with its state-court complaint on November 5.    Forest Creek first provided Defendants information specifically identifying the citizenship of its sole member on August 26, 2015, in response to interrogatories served by Defendants on July 15, 2015.  Defendants removed the case to federal court on September 2, 2015, nearly ten months after receiving Forest Creek's complaint, but only seven days after receiving the information about Forest Creek's sole member's citizenship.  Forest Creek argues that the district court should have granted its motion to remand because such removal was untimely.

A defendant may remove a civil action brought in state court to federal district court if the federal court would have original jurisdiction.  28 U.S.C. § 1441(a).  If a federal district court would have jurisdiction over a case as stated by the initial pleading, the defendant may file a notice of removal within thirty days after receiving service of the initial pleading.  *Id.* § 1446(b)(1).  Otherwise, the defendant may file a notice of removal within thirty days after receiving the "paper from which it may first be ascertained that the case is one which is or has become removable."  *Id.* § 1446(b)(3).  A case may not be removed more than one year after its commencement, however, unless the plaintiff has acted in bad faith.  *Id.* § 1446(c)(1).

To determine whether Defendants' removal was timely, we must identify when the thirty-day period for removal began in this case.  We have stated that the thirty-day period for removal

begins to run when the initial pleading or a subsequent paper first provides "solid and unambiguous information that the case is removable." *Berera v. Mesa Med. Grp., PLLC*, 779 F.3d 352, 364 (6th Cir. 2015) (internal quotation marks and citation omitted). Therefore, the thirty-day period for removal begins when a defendant has solid and unambiguous information that a federal district court would have jurisdiction over the case. As removal in this case was based on diversity jurisdiction, the thirty-day period began when Defendants first had solid and unambiguous information that Forest Creek's citizenship differed from both Defendants' and that the amount in controversy exceeded $75,000. *See* 28 U.S.C. § 1332(a)(1). The complaint stated that the amount in controversy exceeded $75,000, so only diversity of citizenship is at issue in this case.

The complaint pleaded that Forest Creek was a Tennessee limited liability company (LLC). As an LLC, Forest Creek shares citizenship with each of its members. *Varsity Brands, Inc. v. Star Athletica, LLC*, 799 F.3d 468, 494 (6th Cir. 2015). The complaint did not state any information about Forest Creek's members or their citizenship. Forest Creek argues that Defendants also could have learned from public information on file with Tennessee state and local agencies that Forest Creek had only one member and had its principal offices in Las Vegas, Nevada. It is undisputed, however, that neither the complaint nor any public information available on the day Defendants received the complaint indicated the citizenship of Forest Creek's sole member (and thus of Forest Creek itself). Without knowledge of Forest Creek's citizenship, Defendants did not have the information necessary to determine whether a federal district court would have diversity jurisdiction. Therefore, the thirty-day period for removal did not begin when Forest Creek served the complaint on Defendants.

Defendants argue that the thirty-day period began on August 26, 2015 when they received Forest Creek's letter identifying the citizenship of its sole member. If so, Defendants' removal on September 2 was timely. Forest Creek does not identify a specific earlier date on which the thirty-day period began or expired. Forest Creek does not identify any paper it provided to Defendants prior to August 26 that would have permitted Defendants to identify Forest Creek's citizenship. Nor does Forest Creek argue that any new public information became available between the service of the complaint and August 26 from which Defendants could have identified Forest Creek's citizenship. It is thus undisputed that Defendants had no information available to them from which they could determine Forest Creek's citizenship prior to August 26.

Forest Creek argues that Defendants had an obligation to further investigate Forest Creek's citizenship sooner than they did. Specifically, Forest Creek argues that Defendants should have inquired of Forest Creek about its sole member's citizenship prior to their July 15 interrogatories, although Forest Creek does not propose a specific deadline. Forest Creek recites a statement quoted by the district court that "[w]hen an initial pleading does not present solid and unambiguous information that the case is removable, but does at a minimum suggest removability, a burden is placed on the defendant to inquire about removability . . . 'within a reasonable period of time.'" *Gascho v. Glob. Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 687 (S.D. Ohio 2012) (quoting *Fultz v. Columbia Gas of Ohio*, No. 1:10 CV 2683, 2011 WL 768090, at *3 (N.D. Ohio Feb. 28, 2011)). *Gascho* involved the time limits for removal under the Class Action Fairness Act (CAFA). Defendants retort that the Sixth Circuit subsequently established a contrary rule that "in CAFA cases, the thirty-day clocks of § 1446(b) begin to run only when the defendant receives a document *from the plaintiff* from which the defendant can unambiguously

ascertain CAFA jurisdiction." *Graiser v. Visionworks of Am., Inc.*, 819 F.3d 277, 285 (6th Cir. 2016). "Under this bright-line rule, a defendant is not required to search its own business records or 'perform an independent investigation into a plaintiff's indeterminate allegations to determine removability.'" *Id.* (quoting *Cutrone v. Mortg. Elec. Registration Sys., Inc.*, 749 F.3d 137, 145 (2d Cir. 2014)).

Neither *Graiser* nor *Gascho* is directly relevant here because removal based on CAFA differs from removal based on diversity jurisdiction in important ways. In cases not involving CAFA, the removal statutes are to be construed "strictly" and ambiguities "must be resolved in favor of remand to the state courts." *Id.* at 283 (quoting *Holston v. Carolina Freight Carriers Corp.*, No. 90-1358, 1991 WL 112809 (6th Cir. June 26, 1991)). Although CAFA removal is governed by the same thirty-day limits as general removal, *id.* at 282 (citing 28 U.S.C. § 1453), CAFA removal is unique in that "no antiremoval presumption attends cases invoking CAFA," *id.* at 283 (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014)). We need not look to CAFA cases to resolve this case.

Here, it is undisputed that prior to August 26 Defendants did not have access to information—either in the pleadings and papers provided by Forest Creek or in public records—from which they could identify Forest Creek's citizenship. Defendants removed this case seven days after receiving the first paper that provided unambiguous information that the case was removable. Removal was therefore timely under 28 U.S.C. § 1446(b)(3). We affirm the district court's denial of Forest Creek's motion to remand.

## B. Negligent Misrepresentation and Joinder

Forest Creek challenges the dismissal of its negligent misrepresentation claim on three grounds. First, it argues that Defendants' motion for judgment on the pleadings was premature because it preceded any deadline for amending pleadings. A party may move for judgment on

the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). The pleadings are closed after the filing of the complaints, answers, and any replies ordered by the court. 5C Wright & Miller, *Fed. Prac. & Proc.* § 1367 (citing Fed. R. Civ. P. 7(a)). Because both Defendants had filed their answers, Defendants' Rule 12(c) motion was not premature.

Second, Forest Creek argues that its proposed amended complaint was not futile as to the negligent misrepresentation claim, so the district court should not have denied its motion for leave to amend. The proposed amended complaint was futile if, taking its allegations as true, it failed to allege facts that would establish a negligent misrepresentation claim. *See Hoven*, 751 F.3d at 783 (describing Rule 12(c) standard).

The negligent misrepresentation claim is governed by Tennessee law, which points to the Restatement (Second) of Torts § 552. *See John Martin Co. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 431 (Tenn. 1991). Under the Restatement, liability for negligent misrepresentation is limited to those who suffer loss "by their justifiable reliance" upon false information, and that set of persons includes only "the person or one of a limited group of persons for whose benefit and guidance [the speaker] intends to supply the information or knows that the recipient intends to supply it." Restatement (Second) of Torts § 552(1), (2)(a). In other words, Tennessee courts limit liability for negligent misrepresentation "to only those whose use of the information is reasonably foreseeable." *John Martin Co.*, 819 S.W.2d at 432.

Forest Creek's proposed amended complaint would be sufficient, then, if it alleged that Hediger's representatives intended, knew, or could reasonably foresee that their statements about the Property's lack of mold would reach Forest Creek. The proposed amended complaint contains the following relevant allegations. First, in his decision to purchase the Property, Cohen

relied on Defendants' agents' January 2011 statements that there was no mold. In September 2011, an entity Cohen created, Highland Creek, purchased the Property. After Lloyd's acquired the Property through foreclosure, Lloyd's transferred the Property to Forest Creek in November 2011. At all relevant times, Cohen had authority to act on behalf of Highland Creek, Lloyd's, and Forest Creek with respect to the inspection, purchase, and sale of the Property. Defendants, through their agents, knew or should have known that Cohen would rely on the false information they provided and that he would provide this information to the corporate entity that would purchase the Property. Finally, Forest Creek alleges that it justifiably relied on this false information and suffered damages as a result.

Defendants argue that the complaint's allegation that they should have known Cohen would use a corporate entity to purchase the Property is conclusory and not backed up by any other facts. Defendants are correct. The complaint does not allege that during Cohen's 2011 visit he informed Defendants' representatives how he might be purchasing the Property. Nor does the complaint allege that Defendants were aware of Cohen's connections to Highland Creek, Lloyd's, or Forest Creek. Furthermore, neither Highland Creek nor Forest Creek existed at the time of Defendants' alleged misrepresentations to Cohen, so Defendants could not have known the identity of either LLC or Cohen's relationship to these entities.

Defendants arguably could have foreseen that any entity controlled by Cohen that ultimately purchased the Property would rely on Defendants' statements to Cohen in making that purchase (even if Defendants could not have known the name of that entity at the time of their statements because it did not yet exist). The complaint does allege that Defendants communicated directly with Cohen about continuing management services at the Property after Highland Creek's purchase, suggesting that Defendants likely recognized a connection between

Cohen and Highland Creek, at least immediately after the purchase. But Highland Creek is not the Plaintiff. Defendants' communications with Cohen ended before Lloyd's foreclosed on the Property and transferred ownership to Forest Creek. Forest Creek cites no caselaw suggesting that foreseeability extends through circumstances comparable to those here—a foreclosure proceeding and two ownership changes.

In this case, Plaintiff Forest Creek did not exist at the time of the alleged misrepresentations, it was not the entity that next purchased the Property after the alleged misrepresentations, and its connection to the Property began only after the Defendants' connection ended. In addition, while Cohen is now the sole member of Forest Creek, Forest Creek identified a different person as its sole member in 2015, making it less reasonable that Defendants would recognize a connection between Forest Creek and Cohen. Because Defendants' could not reasonably foreseeable that Forest Creek would rely on Defendants' statements to Cohen, the district court properly dismissed the negligent misrepresentation claim and denied Forest Creek's motion for leave to amend.

Forest Creek's third argument regarding the negligent misrepresentation claim is that the district court should have permitted Forest Creek to join Cohen as a plaintiff rather than dismissing the claim. Persons may join in one action as plaintiffs if their claims arise out of the same transaction or occurrence and involve common questions of law or fact. Fed. R. Civ. P. 20(a)(1). Forest Creek did not seek to join Cohen until after the district court had already dismissed its negligent misrepresentation claim. The only claim remaining was Forest Creek's breach of contract claim, and Forest Creek does not argue that Cohen's potential negligent misrepresentation claim arises from the same transaction or occurrence as that. The district court therefore properly rejected the proposed joinder of Cohen. Rule 17(a)(3), which prevents courts

from dismissing actions for failure to prosecute in the name of the real party in interest until a reasonable time after an objection, did not bar dismissal here because no objection was raised until after dismissal. Fed. R. Civ. P. 17(a)(3).

### C.      Breach of Contract

Forest Creek's claim that Defendants breached the Contract executed between MPI and Miles depends on whether MPI's rights in the Contract were properly assigned to Highland Creek and then to Forest Creek. The Contract contains a non-assignment provision and provides that it is governed by Georgia Law. Georgia courts enforce non-assignment provisions if a contract remains executory. *Mingledorff's Inc. v. Hicks*, 209 S.E.2d 661, 662 (Ga. Ct. App. 1974) (quoting *Cowart v. Singletary*, 79 S.E. 196, 202 (Ga. 1913)). "An executory contract is one in which something remains to be done by one or more parties." Ga. Code Ann. § 13-1-2(b).

MPI and Highland Creek executed the agreement purportedly assigning MPI's rights in the Contract on September 27, 2011. The Defendants terminated the Contract as of the next day. Because both MPI and Defendants still had remaining obligations under the Contract on the day of MPI's purported assignment to Highland Creek, the Contract remained executory and thus its non-assignment provision remained enforceable under Georgia law. Since the assignment to Highland Creek was invalid, Highland Creek could not later assign rights to the Contract to Forest Creek. Forest Creek therefore could not bring a claim for breach of the Contract.

Forest Creek argues on appeal that Defendants terminated the Contract as of September 27, before the assignment, but the record reflects that the termination occurred effective September 28. According to the district court, the parties agreed that the termination occurred on September 28, and an earlier portion of Forest Creek's own brief quotes the September 28 termination date. The district court properly dismissed Forest Creek's breach of contract claim.

### III.    CONCLUSION

For the reasons stated above, we affirm the district court's orders denying Forest Creek's motion to remand, granting Defendants' motion for judgment on the pleadings as to the negligent misrepresentation claim, and granting summary judgment to Defendants as to the breach of contract claim.